STATE EX REL. MCKENZIE and another, Respondents, vs. BROWN, School Clerk, and others, Appellants.

*April 8—July 13, 1921.*

*Schools and school districts: Union free high schools: Validity of proceedings: Approval of state superintendent: Necessity: Certiorari: Time within which action must be brought.*

1. The provisions of the law relating to the establishment of union free high schools (sec. 40.47, Stats. 1919) confer no power, nor do they attempt to confer power, upon the state superintendent to review the regularity of the proceedings had pursuant to its provisions, and in that respect sec. 40.47 is the same as sec. 497, Stats. 1915, now a part of sec. 39.01, it being the intent and purpose of the statute to confer upon the superintendent, in the exercise of the supervisory control vested in him by sec. 1, art. X, Const., the power to determine whether or not the educational interests of the community involved will be best served by the incorporation of the proposed high school.

2. A petition in *certiorari* to review a proceeding resulting in the establishment of a union free high school should be quashed where it does not allege that the proceedings were certified

13] · JANUARY TERM, 1921. 499

State ex rel. McKenzie v. Brown, 174 Wis. 498.

to or approved by the state superintendent, since such a proceeding results in no determination in the absence of such certification or approval by the state superintendent, *certiorari* lying to review a final determination only.

3. The use of the word "matters" in sec. 1, ch. 184, Laws 1901 (sub. (2), sec. 39.01, Stats. 1919), providing that no review of the decisions of the state superintendent of public instruction on matters decided by him shall be had unless proceedings by *certiorari* or other appropriate action be brought within thirty days after such determination, indicates that it was intended to cover all decisions made by the state superintendent, whether the controversies in which the decisions were made reached him by way of appeal or were instituted before him in the first instance; and *certiorari* to review proceedings resulting in the establishment of a union free high school must be brought within thirty days after the approval by the state superintendent of the proposed school.

APPEAL from a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge. *Reversed.*

*Certiorari.* It was proposed to incorporate a union free high school, the boundaries of which should include territory lying partly in the towns of Eureka, St. Croix Falls, and Balsam Lake, and including the village of Centuria. The petitioners proceeded under the provisions of sec. 40.47, Stats. An election was held and the result of the election certified to the state superintendent, who issued the certificate provided for in sub. (6) of sec. 40.47. The writ of *certiorari* was taken to review the proceedings which resulted in the establishment of the union free high school. The writ was directed to *T. H. Brown,* school clerk, *N. J. Larson,* director, *Ernest Nelson,* treasurer, of union free high school district of the village of Centuria and towns of St. Croix Falls, Eureka, and Balsam Lake; *Gust Anderson,* village clerk of the village of Centuria; *William Ihrig,* president of the village of Centuria; *Frank Blanding,* chairman, and *F. P. Blanding,* clerk, of the town of St. Croix Falls; *Emil Casperson,* chairman, and *Henry Peterson,* town clerk, of the town of Eureka; *George L. Freeman,* chairman, and *Ray A. Benage,* town clerk, of the town of Balsam Lake.

In the circuit court the petition was challenged by motion to quash on the ground that it was misdirected, the state superintendent of public instruction not being made a party. The trial court was of the opinion that the union free high school district is not created by the certificate issued by the state superintendent, but that it is created by the election held in the territory to be embraced in the district, and denied the motion.   The court held that the proceedings were defective in two particulars: first, that the election was held in the village and not in an outlying territory as provided by the last clause of sub. (4) of sec. 40.47; and second, that three weeks' notice of the election was not given. . Judgment was entered wholly reversing and annulling the proceedings leading up to and resulting in the establishment of the union free high school in the village of Centuria and the towns of St. Croix Falls, Eureka, and Balsam Lake, from which judgment the defendants appeal.

For the appellants there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy.*

For the respondents there was a brief by *McNally & Doar* of New Richmond, and oral argument by *W. T. Doar.*

A brief was also filed by *T. M. Holland* of Park Falls as *amicus curiæ* and *M. E. Yager* of Frederic, of counsel, and oral argument by *Mr. Yager.*

The following opinion was filed April 20, 1921:

ROSENBERRY, J.   The provisions of the law relating to the establishment of union free high schools (sec. 40.47, Stats.) leave much to be desired in the way of definiteness, completeness, and unity.   In the view which we take of this matter it is not necessary to set out the entire statute nor to refer to the many inconsistencies therein which were urged upon us on the oral argument as well as in the briefs.

It is the contention of the defendants that the writ should be quashed for the reason that it is misdirected, in that the

state superintendent of public instruction is not made a party to the proceeding. This leads to a consideration of the statute, sec. 40.47:

"(1) With the advice and consent of the state superintendent a free high school, to be known as a 'union free high school,' may be established and maintained in any town, or in any tract of contiguous territory having an area of not less than thirty-six nor more than seventy-two square miles and bounded by town, school district, section or half-section lines or by lines bounding in part an existing free high school district, or in cases where impassable streams, lakes or swamps render it impracticable to follow such boundary lines, such natural boundaries may be substituted. . . .

"(6) The result of the election shall be certified at once by the election officers to the clerk of each town and village concerned; and if the proposal be adopted the result shall also be certified to the state superintendent by the respective clerks within six days after the election. If such action meets the approval of the state superintendent he shall issue a certificate of establishment of a union free high school in said tract of territory."

Under the provisions of this statute it is argued that there is vested in the state superintendent the power to exercise a discretion as to whether or not the proposed union free high school shall be established; that the petition does not show that the result was certified to the state superintendent or that he issued the certificate of establishment; and that the matter had not proceeded to a final determination and hence the writ should not have been issued.

If the law vests in the state superintendent no discretion, it is difficult to discover the legislative intent in requiring the organization to be with the advice and consent of the state superintendent and his approval to be evidenced by the issuing of a certificate of establishment. The provisions of sec. 40.47 confer no power, nor do they attempt to confer power, upon the state superintendent to review the regularity

of the proceedings had pursuant to its provisions. Assuming that such authority might constitutionally be conferred upon the state superintendent, no such power is conferred by sec. 40.47, and in that respect it is the same as sec. 497, now a, part of sec. 39.01. *State ex rel. Schuette v. Cary,* 143 Wis. 83, 126 N. W. 562; *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424; *State ex rel. Bidgood v. Clifton,* 113 Wis. 107, 88 N. W. 1019.

It is the intent and purpose of the statute to confer upon the state superintendent, in the exercise of the supervisory control vested in him by sec. 1, art. X, of the constitution, the power to determine whether or not the educational interests of the community involved will be best served by the incorporation of the proposed union free high school. Manifestly the corporation cannot come into existence unless and until the state superintendent shall evidence his approval in the manner prescribed by statute, otherwise his advice and consent might be rendered nugatory; for, the corporation once being in existence, the state superintendent could not revoke its powers or suspend its charter. The act, then, by means of which the corporation comes into existence is the decision or determination of the state superintendent. While his decision does not, strictly speaking, create the corporation, the legislature has conferred upon him the power to determine whether or not the proceedings taken under the statute shall operate to create a corporation.

The petition does not allege that the proceedings were certified to or approved by the state superintendent. The proceeding attempted to be reviewed by the writ is therefore one which has resulted in no determination and hence it is not reviewable under a writ of *certiorari,* which lies to review a final determination only. 11 Corp. Jur. p. 126, § 75, and cases cited. As was said in *Mayor, etc. v. Fordyce,* 88 N. J. Law, 440, 97 Atl. 67, *certiorari* cannot be used to draw judicial opinions in advance. The matter under re-

view must have terminated in a final order. *Gauld v. Board of Supervisors,* 122 Cal. 18, 54 Pac. 272.

It appears from the return that the proceedings were certified to the state superintendent and that he did issue the certificate of establishment as provided in sub. (6), sec. 40.47. If we consider the petition amended so as to show this undisputed fact, the matter may not then be reviewed by *certiorari* because of the limitation provided in sub. (2), sec. 39.01:

"No review of the decisions of the state superintendent on matters decided by him shall be had unless proceedings by *certiorari* or other appropriate action be brought within thirty days after such determination by him," etc.

This provision was first enacted as ch. 184, Laws 1901. As now arranged, it might well be construed as applying to decisions on matters brought to the state superintendent pursuant to the provisions of sub. (1), sec. 39.01. The use in the original statute of the word "matters" is significant, and by that we think it was intended to cover all decisions made by the state superintendent, whether the controversies in which the decisions were made reached him by way of appeal or were instituted before him in the first instance. A review of the statutory provisions relating to the creation of municipal and *quasi*-municipal corporations shows that the legislature has endeavored to set matters relating to the validity of the organization of such corporations at rest at as early a period as possible, and in consequence has provided by statutes of limitation a brief period in which such matters may be reviewed. The construction which we place upon the statute is in accord with the general legislative purpose.

*By the Court.*—Judgment of the circuit court reversed, and cause remanded with directions to quash the writ.

A motion for a rehearing was denied, with $25 costs, on July 13, 1921.